# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. CR408-208 |
| | ) |
| RONALD RENARDO SMITH, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Defendant has filed a motion to suppress contesting the search and seizure of a vehicle in which he was a passenger. (Doc. 17.) Defendant also seeks to dismiss or quash the indictment charging him with unlawful possession of the firearm and ammunition found during the vehicle search. (Doc. 15.)

Pursuant to its standard practice, the Court scheduled an evidentiary hearing to develop the facts necessary to the resolution of defendant's suppression motion. But after reviewing the briefs and considering the arguments of counsel at that hearing, the Court determined that the taking of evidence was unnecessary, for

even if the facts asserted in defendant's brief were found in his favor, he would not be entitled to the suppression of evidence. Specifically, since defendant concedes that the vehicle in which he was riding had a broken taillight, the officers who observed this traffic code violation had probable cause to stop the vehicle (and could proceed to do so even though they had another, ulterior motive for their actions). As a result, the stop was lawful. Further, as defendant concedes that he was simply a passenger with no ownership or possessory interest in the vehicle, he lacks "standing" to challenge the subsequent search of the car, regardless of whether that search offended the Fourth Amendment rights of the owner or driver. Finally, even if defendant could establish that he had a legitimate expectation of privacy in the vehicle sufficient to contest the search, he has pointed to no conduct by the officers inconsistent with the Fourth Amendment's reasonableness standard.

The following facts are undisputed. Around 10:00 p.m. on December 18, 2007, two officers with the Savannah-Chatham Metropolitan Police Department were in separate patrol cars working an anti-robbery assignment at Live Oak Plantation

Apartments on Waters Avenue when a car with a broken right taillight turned into the complex and parked. In addition to observing the broken taillight, both officers noted that the vehicle's windows appeared to be excessively tinted. After the car parked, three black males exited the vehicle and spoke with another black male who had approached on foot. Some five minutes later, all four individuals entered the car and exited the complex. At this point the officers decided to stop the vehicle for violating the Georgia traffic code requiring that all vehicles be equipped with two taillights with lenses maintained in good repair.[1] O.C.G.A. § 40-8-23(b) and (e) (2008). When one of the officers approached the vehicle, he directed the driver to lower all four of the car's tinted windows. As soon as the windows were lowered, the officer recognized the smell of "blunt block," a product used to mask the odor of marijuana. The officer asked all four men for identification and requested that they remain still in their seats. Defendant, who was in the front passenger seat, could not produce identification

---

[1] It is uncontested that the officers had an additional interest in stopping the car, as they were investigating robberies that had occurred in the apartment complex and had an unparticularized and undeveloped hunch that the car's occupants might be up to no good.

and began fidgeting and reaching around the area by his seat. After directing defendant to step out of the car, the officer patted him down and found a rock of crack cocaine in his pocket. The officers obtained the consent of the driver to search the vehicle,[2] and during that search they found a weapon tucked inside a Halloween mask protruding from beneath defendant's seat. Defendant seeks to suppress evidence of the gun, claiming that it is the fruit of an illegal stop and search of the car.

A. Motion to Suppress

After discussing the matter with counsel, the Court determined that an evidentiary hearing was not required because even if all the facts alleged by defendant turned out to be true, he would not be able to prevail on his suppression motion. It is well-established in the Eleventh Circuit that a district court may refuse a defendant's request for a suppression hearing where he fails to allege facts that, if decided in his favor, would require the grant of relief. United States v. Cooper, 203 F.3d 1279, 1284-85 (11th Cir.

---

[2] The government referenced the driver's consent at the hearing, noting that this fact had been omitted from its brief. Defendant did not dispute the fact that the driver consented to the search.

2000); United States v. Richardson, 764 F.2d 1514, 1526-27 (11th Cir. 1985). For the following reasons, the facts alleged (or conceded) by defendant fail to establish a violation of any of his constitutional rights that would warrant the suppression of evidence in this case.

1. **The Initial Stop**

Defendant asserts in his brief that "there existed no probable cause to stop the Buick Regal, *save and except for a broken taillight*, and some question about the degree of window tint." (Doc. 17 at 3 (emphasis added).) This concession is fatal to defendant's argument that the traffic stop was "pretextual."[3] (Id.) In Whren v. United States, 517 U.S. 806, 810 (1996), the Supreme Court held that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." The existence of probable cause depends purely on the objective facts available to the officer. "Subjective intentions play

---

[3] As discussed below, a mere passenger generally lacks standing to challenge the search of the vehicle in which he is riding. But, a passenger does have standing to challenge the unlawful *stop* of a vehicle because his own liberty interests are implicated by such police misconduct. United States v. Kimball, 25 F.3d 1, 5 (1st Cir. 1994); United States v. Moore, 2006 WL 1232811 at *1 (M.D. Fla. 2006) (noting that at least 6 circuit courts have concluded that a mere passenger has standing to challenge the stop of a vehicle even if he has no standing to challenge its search); see Wayne R. LaFave, Search and Seizure § 11.3(e) at 194 (4th ed. 2004).

5

no role in ordinary, probable-cause Fourth Amendment analysis." Id. at 813. For this reason, the Supreme Court has rejected the notion that a traffic stop based on probable cause is constitutionally permissible only if a reasonable officer would have made the stop solely for the purpose of enforcing the traffic laws. Id. at 813-15. Defendant endeavors to distinguish Whren by noting that the officers in that case immediately conducted a stop after observing a traffic violation, whereas in this case the officers delayed making a traffic stop for some five minutes while they watched the vehicle and its occupants to see what they were doing. But this is a distinction without a difference. The Whren Court made very clear that where probable cause to conduct a traffic stop is present, the fact that the officers have some ulterior motive for the stop is simply irrelevant to the analysis. 517 U.S. at 811-12; United States v. Holloman, 113 F.3d 192, 194 (11th Cir. 1997) (noting that Whren "squarely rejected the pretextual stop analysis that had prevailed previously in the Eleventh Circuit" and "conclusively refute[d] the notion that ulterior motives may invalidate police conduct that is justified on the basis of probable cause to believe that a violation of

law has occurred"). See also Draper v. Reynolds, 369 F.3d 1270, 1275 (11th Cir. 2004) (quoting Holloman). Here, the officers had probable cause to stop the car after observing that one of its tail lights was not functioning, which constituted a traffic code violation. O.C.G.A. § 40-8-23(b), (e) (2008). The fact that the officers may have had other underlying reasons to stop the car does not affect the analysis.

Nor is an officer compelled to act immediately upon acquiring probable cause to believe that a vehicle is being operated in violation of the state traffic code. See United States v. Price, No. CR107-290, 2008 WL 843425 (N.D. Ga. Jan. 23, 2008) (rejecting defendant's argument that officer's delay in effectuating traffic stop demonstrated that the stop was based on pretext and invalidated it); United States v. Cline, 349 F.3d 1276, 1280, 1285-87 (10th Cir. 2003) (traffic stop lawful even though officers had other motives for stopping defendant and did not stop him until more than a mile after he had committed the traffic violation); United States v. Scopo, 19 F.3d 777, 780, 782 (2nd Cir. 1994) (traffic stop lawful where police observed traffic violation and followed car for

2.2 miles before stopping it). Thus, the short delay between spotting the broken taillight and stopping the car does not invalidate the otherwise lawful stop. As a result, even accepting his version of the events as true, defendant has not shown that the stop of the car was unlawful.

## 2. Standing

Nor has defendant shown sufficient standing to challenge the subsequent search of the vehicle. It is well settled that a defendant always bears the burden of establishing his standing to assert a violation of the Fourth Amendment. Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978); United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) ("The individual challenging a search bears the burden of proof and persuasion" on the issue of his standing); United States v. Hall, 716 F.2d 826, 829 (11th Cir. 1983) ("The defendant bears the burden of showing that he possesses a privacy interest" in the area searched). Accord United States v. Silva, 247 F.3d 1051, 1055, 1057 (9th Cir. 2001); United States v. Melucci, 888 F.2d 200, 202 (1st Cir. 1989). See also 4 LaFave, Search and Seizure § 11.2(b) at 46-47. To meet this burden, defendant must

show that he had a legitimate expectation of privacy in the area searched. Rawlings v. Kentucky, 448 U.S. 98, 104-05 (1980); Rakas, 439 U.S. at 143. "Determining whether an individual has a legitimate expectation of privacy in the object of a search requires a two-part inquiry": (1) whether the individual manifested a subjective expectation of privacy in the property searched, and (2) whether the individual's subjective expectation of privacy is one that society is prepared to recognize as reasonable. United States v. McBean, 861 F.2d 1570, 1573 & n.7 (11th Cir. 1988). "A legitimate expectation of privacy [must] be proven by factors beyond mere possession, such as a right to exclude or a right to privacy." United States v. Espinosa-Orlando, 704 F.2d 507, 512 (11th Cir. 1983) (citing Rakas, 439 U.S. at 143-44 & n. 12).

Although a passenger in an automobile may have standing to challenge the legality of the initial *stop* of a vehicle in which he was riding, see n.3 supra, he generally lacks standing to challenge a subsequent search of the vehicle. "[T]he Court has held that a passenger, who has no possessory interest in the automobile, does not have a legitimate expectation of privacy in the interior of the

9

automobile because he does not have the right to exclude others from the car." United States v. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008) (citing Rakas, 439 U.S. at 140, 143 n.12, 148). Moreover, courts have specifically held that passengers are not typically deemed to have a privacy interest in the floorboard area under and around their seat. See United States v. Pulliam, 405 F.3d 782, 786 (9th Cir. 2005) ("Defendant 'made no showing that he had any legitimate expectation of privacy in the area under the seat of the car in which he was merely a passenger,' as this is an 'area in which a passenger *qua* passenger simply would not normally have a legitimate expectation of privacy.'") (citing Rakas, 439 U.S. at 148-49). Defendant, whose weapon was found under his seat in the car, conceded in his brief that he was only a passenger in a car driven by another, (doc. 17 at 2, 5), and he has not contested the government's assertion that the vehicle was owned by the girlfriend of another passenger. He offered no other information, either in his brief or during the hearing, to show that he had any expectation of privacy in the vehicle. As defendant has failed to

show that he has standing to contest the search, the Court need not address whether the fruits of it should be suppressed.

Nevertheless, as defendant has not shown that the officers transgressed the Fourth Amendment's reasonableness standard at any point during the traffic stop, he would not be entitled to suppression of the evidence even if he had standing to challenge the search of the vehicle. Defendant argues that the officers somehow acted improperly in directing the driver to lower all four of the vehicle's windows and in ordering defendant to exit the car. Under the stipulated facts, neither act offended the Constitution. It is undisputed that there were four occupants in the vehicle and that the windows were darkly tinted. Given the threat to officer safety inherent in all traffic stops,[4] an officer approaching such a vehicle—even during a seemingly "routine" stop—would be entirely justified in insisting on such a minor intrusion upon the driver's control of his vehicle. United States v. Stanfield, 109 F.3d 976, 981 (4th Cir.

---

[4] The Supreme Court has noted that a police officer is exposed to an "inordinate risk . . . as he approaches a person seated in an automobile," Pennsylvania v. Mimms, 434 U.S. 106, 110 (1977), and has observed that the potential danger inherent in every roadside stop "is likely to be greater when there are passengers in addition to the driver in the stopped car." Maryland v. Wilson, 519 U.S. 408, 414 (1997).

1997) (noting the potential harm to officers increases exponentially when the interiors of vehicles are blocked from view by tinted windows); United States v. Camacho, No. CR107-103, 2008 WL 471700, at *4 (D. Utah Feb. 19, 2008) (slip opinion) (finding that officer approaching car with heavily tinted windows was reasonable in asking defendant to lower the back passenger window during a traffic stop); United States v. Brown, 334 F.3d 1161 (D.C. Cir. 2003) (finding it reasonable, in light of defendant's darkly tinted windows, to "merely crack open the car door and look inside without breaking the plane of the car's surface"); United States v. Sparks, No. CR407-127, 2007 WL 2422126, at *4 (S.D. Ga. Aug. 22, 2007) (citing Stanfield).

Defendant also concedes (by not disputing the driver's incident report) that he was "extremely nervous and could not follow directions" during his initial encounter with the officers. The law is clear that an officer conducting a traffic stop is empowered to direct both the driver and any passenger to exit the vehicle as a matter of course. Maryland v. Wilson, 519 U.S. 408, 410 (1997) (holding that officers may order all occupants to exit

vehicles and move off onto the shoulder of the road during routine traffic stops, as passengers' liberty interests are minimal and must yield to the state's interest in officer safety); United States v. Clark, 337 F.3d 1282, 1285 (11th Cir. 2003) (discussing Supreme Court's reasoning in Wilson). This is particularly true where an officer is faced with a non-cooperative passenger who fidgets and who fails to follow basic instructions. Finally, defendant did not contest the government's assertion at the suppression hearing that the driver consented to the search of the vehicle. Nor has defendant alleged that the driver lacked authority to give such consent. Given the uncontested facts, defendant has failed to establish that the search of the vehicle (or any aspect of the officers' conduct) violated the Fourth Amendment.

B. **Motion to Dismiss**

In addition to the search and seizure argument, defendant contends that the indictment should be dismissed as it is "in obvious contradiction to the plea bargain struck by defendant in the state prosecution." (Doc. 15 at 2.) Defendant alleges that

although he was arrested for "possession of a controlled substance and possession of a firearm during the commission of a crime," he entered a guilty plea to a state charge of possession of cocaine in exchange for the state's agreement that "all other charges against him, including the firearm, were to be dropped." (Id.) He urges that this unwritten agreement should be interpreted to preclude all other charges, including federal charges, against him in connection with this incident.

The federal government is generally not bound by a state plea agreement promising a defendant that no further proceedings will be instituted against him, unless an agent of the federal government was sufficiently involved in and agreed to the negotiations. See United States v. Sells, 477 F.3d 1226, 1234 (10th Cir. 2007) (holding that federal government was not bound by state plea agreement which stated that the federal authorities agreed not to institute any further proceedings or indictments for offenses connected to the state case, absent evidence that state prosecutors communicated with federal authorities, that state prosecutors were authorized to speak for the federal government in the plea

agreement, or that the state plea agreement was signed by any Assistant United States Attorney); United States v. Fuzer, 18 F.3d 517, 520-21 (7th Cir. 1994) (holding that despite state prosecutor's promise that defendant would not be federally prosecuted if he accepted guilty plea, the agreement did not bind federal prosecutors, despite presence of ATF agents at the state hearing who were aware of the agreement, where there was no evidence that the agents promised defendant he would not be federally prosecuted nor that they were authorized to bind the United States Attorney); United States v. Roberson, 872 F.2d 597, 611 (5th Cir. 1989) (holding that the federal government need not honor a state plea agreement where no agreement was made with federal prosecutors regarding federal prosecution, because "if state agreements that immunize criminal defendants from state charges could bind federal prosecutors, state prosecutors would be able to usurp federal prosecutorial discretion"); United States v. Moran, 349 F. Supp. 2d 425, 479-80 (N.D.N.Y. 2005) (absent any indication that defendant's state plea agreement included provision that no federal prosecution would occur, or that the federal prosecutor had

knowledge of or consented to any state plea agreement, defendant's state plea agreement did not bar his subsequent prosecution on federal drug distribution conspiracy charges).

Here, defendant has failed to establish that his state plea agreement contemplated that there would be no federal prosecution against him. His motion only alleges that he was told generally that "all other charges against him, including the firearm, would be dropped." (Doc. 15 at 2.) Moreover, he has not alleged that any such agreement was actually made by or on behalf of the federal government. He may have misunderstood what the state was offering him in exchange for his guilty plea, but that is not enough to require federal prosecutors to refrain from filing any federal charges against him.[5] Where the federal government was not a party to the state plea agreement and therefore was not contractually bound by the promises of a separate sovereign, defendant is not entitled to dismissal of his federal indictment.

---

[5] Even if defendant alleged that a state prosecutor falsely represented to him that the federal government was somehow involved in the agreement not to further prosecute him, his complaint should be addressed to the state court, which can impose various remedies (though not dismissal of the federal prosecution).

## C. Conclusion

For the foregoing reasons, the Court finds that defendant's motion to dismiss or quash the indictment and his motion to suppress should be **DENIED**. (Docs. 15 & 17)

**SO REPORTED AND RECOMMENDED** this <u>10th</u> day of November, 2008.

<u>/s/ G.R. SMITH            </u>
**UNITED STATES MAGISTRATE JUDGE**
**SOUTHERN DISTRICT OF GEORGIA**